UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| 2010-1 RADC/CADC VENTURE, LLC,<br><br>Plaintiff,<br><br>vs.<br><br>JD INVESTMENT ENTERPRISES, MATTHEW JOHNSON, JEFF DONOVAN, SILVER LEAF COMPANIES, LLC, NATION WEST HOME LOANS, LLC, AMERICA TITLE INSURANCE AGENCY, and LARRY ARMSTRONG,<br><br>Defendants. | ORDER AND MEMORANDUM DECISION<br><br>Case No. 2:09-cv-917<br>Judge Tena Campbell |

## I. Introduction

Plaintiff 2010-1 RADC/CADC Venture, LLC (RADC Venture) sued Defendant Silver Leaf Companies, LLC (Silver Leaf), Defendant Mathew Johnson, and Defendant Jeff Donovan (collectively, the Defendants). RADC Venture has filed a motion for summary judgment (Docket No. 52), which only Silver Leaf opposed. RADC Venture contends that it has the legal right to collect from the Defendants on some personal loan guaranties and agreements. Silver Leaf disagrees, arguing that the original entity that had the right to collect (America West Bank) is defunct, and the right to collect was never properly assigned to RADC Venture. For the reasons set forth below, the court grants RADC Venture's motion for summary judgment.

## II. Summary Judgment Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The court must "examine the factual record and reasonable inferences therefrom in the light most favorable to the party opposing the motion." Lopez v. LeMaster, 172 F.3d 756, 759 (10th Cir. 1999).

### III. Analysis[1]

The court must decide three questions: (A) whether RADC Venture may enforce the various personal guaranties and agreements against the Defendants; (B) whether the foreclosure sale was properly conducted; and (C) whether RADC Venture should be awarded attorney fees and costs. The court answers each question in the affirmative.

**A.   RADC Venture Has the Right to Collect on the Personal Loan Guaranties and Agreements Because America West Bank Was an Intended Third-Party Beneficiary to the Agreements, and RADC Venture Was Properly Assigned Those Rights**

The parties argue over the question: Does RADC Venture have a right to enforce the personal guaranties because it was an intended beneficiary of the Silver Leaf agreements? This question is best addressed in two parts: (1) did Silver Leaf create third-party beneficiary rights in America First Bank? and (2) were those third-party beneficiary rights properly assigned to RADC Venture?

**1.   America West Bank had the Right to Enforce the Personal Loan Guaranties and Agreements**

When a contract is entered into for the benefit of a third party, then the third party is deemed a third-party beneficiary (also known as an "intended beneficiary). Tracy Collins Bank & Trust v. Dickamore, 652 P.2d 1314, 1315 (Utah 1982). Utah courts have adopted Restatement (Second) of Contracts § 302 as setting forth the principles governing third-party beneficiaries. See id.; Ron Case Roofing & Asphalt Paving, Inc. v. Blomquist, 773 P.2d 1382, 1386 (Utah 1989). Section 302 states, in relevant part, that "a beneficiary of a promise is an intended beneficiary if recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties and . . . the performance of the promise will satisfy an obligation of the promisee to pay money to the beneficiary." Restatement (Second) of Contracts § 302(1) &

---

[1] There are no material facts in dispute, and the background of this case is set forth in the parties' pleadings. The court will not repeat any of this background except when necessary to explain the Order and Memorandum decision.

(1)(a) (1981).  And, even when it was not a party to the original contract, a third-party beneficiary has the right to enforce the terms of the contract.  Tracy Collins Bank, 652 P.2d at 1315.

The application of § 302 is well-illustrated in Ron Case Roofing & Asphalt Paving, Inc. v. Blomquist, 773 P.2d 1382 (Utah 1989).  In that case, Brooks Construction was a general contractor overseeing various building projects.  One of its subcontractors, Ron Case Roofing, obtained a judgment against Brooks Construction for $17,500.  Another entity, Vesper Financial, later entered into an agreement with Brooks Construction in which Vesper Financial agreed "to pay all indebtedness which is presently outstanding or in the future may arise" related to Brooks Construction's various building projects.  Id. at 1384–85.  Ron Case Roofing was unable to collect against Brooks Construction directly, so it instead tried to collect on the $17,500 by suing Vesper Financial, arguing that Ron Case Roofing was an intended third-party beneficiary of the agreement.  The Utah Supreme Court agreed, citing to the principles in § 302 of the Restatement.  The Court reasoned that because Vesper Financial clearly stated in its agreement that that it would "pay all indebtedness which is presently outstanding or in the future may arise" relating to Brooks Construction's building projects, it had thereby created enforceable third-party beneficiary rights in Ron Case Roofing, even though Ron Case Roofing was never specifically named in the agreement.  See id. at 1386–87.

Similar to Vesper Financial in Ron Case, Silver Leaf has entered into an agreement which created rights in a third party—namely America West Bank.  JD Investment Enterprises incurred a debt to America West Bank, which was personally guaranteed by Mr. Johnson and Mr. Donovan.  When Silver Leaf purchased JD Investment Enterprises, it entered into two different agreements, agreeing to assume all the obligations of JD Investment Enterprises, Mr. Johnson,

and Mr. Donovan. (RADC Venture's Mem. Supp. Summ. J. Ex. I, at 1, Ex. J, at 2, Docket No. 53.) The agreements specifically identified the loan from America West Bank as one of those obligations. Judged by the standards summarized in § 302 of the Restatement, and by analogy to Ron Case, it is plain that the agreements created third-party beneficiary rights in America West Bank.

### 2. America West Bank's Third-Party Rights Were Properly Assigned to RADC Venture

Contract rights may be assigned—including third-party beneficiary rights, or rights under a guaranty contract. See Witt v. CIT Group/Consumer Fin. Inc., 2:10-cv-440, 2010 WL 4609368, at *3 (D. Utah Nov. 5, 2010); Winegar v. Froerer Corp., 813 P.2d 104, 107 (Utah 1991). Utah law favors the assignability of contract rights, and once a valid assignment is made, the assignee stands in the shoes of the assignor. Lone Mountain Prod. Co. v. Natural Gas Pipeline Co. of Am., 710 F. Supp. 305, 309 (D. Utah 1989). Moreover, the appointment of a receiver acts as a valid assignment of rights. Maxl Sales Co. v. Critiques, Inc., 796 F.2d 1293, 1297 n.2 (10th Cir. 1986).

Based on the undisputed facts presented to the court, it is evident that America West Bank's rights as a third-party beneficiary were properly assigned to RADC Venture. First, when America West Bank was closed and went into receivership, the receiver—the FDIC—became an assignee of America West Bank with exactly the same rights the bank had. The FDIC then executed a deed of trust that assigned its rights to the underlying property as well as "[a]ny and all other documents and instruments evidencing, securing, or relating to the indebtedness . . . ." (RADC Venture's Mem. Supp. Summ. J. Ex. K, at 2, Docket No. 53.) As a result, RADC Venture obtained America West Bank's right to enforce payment of the debt by foreclosing on the property. And although not specifically mentioned in the assignment, when the FDIC

4

assigned its rights to the indebtedness to RADC Venture, the right to collect on the guaranties followed.  See First Nat'l Bank of Ogden v. Taylor, 114 P. 529, 530 (Utah 1911) (stating that "the guaranty follows the debt, and may be enforced by any one who has a legal right to enforce the payment of the debt.").  Nothing in the loan documents, personal guaranties, or agreements indicates that the parties intended to restrict the assignment of the right to collect.  To the contrary, there are numerous instances where the language explicitly states that the rights under contract were intended to inure to the benefit of all successors and assigns.  (E.g., RADC Venture's Mem. Supp. Summ. J. Ex. I, at 2, Docket No. 53 ("This Agreement is binding up and inures to the benefit of the parties, their . . . predecessors, successors, and assigns.").)  As a result, RADC Venture not only obtained America West Bank's rights to foreclose on the debt and enforce the personal guaranties against Mr. Johnson and Mr. Donovan, it also obtained America West Bank's rights to enforce the guaranties against Silver Leaf.

**B.     The Foreclosure Sale Was Properly Conducted**

The next question is whether RADC Venture properly conducted the foreclosure sale.  Because the foreclosure was judicially ordered, the controlling statutes are Utah Code Annotated §§ 78B-6-901 to -909.  Contrary to Silver Leaf's contentions, the requirements of fair market value under the non-judicial foreclosure statute in § 57-1-32 do not apply to judicial foreclosures.  See Jones v. Johnson, 761 P.2d 37, 41 n.2 (Utah Ct. App. 1988).  Accordingly, the foreclosure sale did not need to sell the properties at fair market value, and Silver Leaf's arguments are off-point.

Utah has a general policy to uphold judicial sales except when they are manifestly unfair, such as through mistake, fraud, gross irregularities, or collusion.  Beesley v. Hatch, 863 P.2d 1319, 1322 (Utah 1993).  Courts hope that such a policy will encourage bidding at judicial sales.  Id.  Based on the documents before the court, there are no allegations of mistake, fraud, manifest

unfairness, gross irregularities or collusion. For that reason, the court defers to the general policy to uphold judicial sales, and holds that the foreclosure sale was properly conducted.

### C. RADC Venture Should Be Awarded Fees and Costs Because the Agreements Specifically Provide for Such a Result

The final question is whether the court should award attorney's fees and legal costs to RADC Venture. Under Utah law, if the provisions of a contract allow for the recovery of attorneys' fees, then "[a] court may award costs and attorney fees to either party that prevails in a civil action" based on the contract. Utah Code Ann. § 78B-5-826; Dixie State Bank v. Bracken, 764 P.2d 985, 988 (Utah 1988). When a court awards fees pursuant to a contract, the court has less discretion in denying fees than it has in other contexts. Bank of the W. v. Millennia Inv. Corp., 2:11-cv-465, 2012 WL 2256926, at *2 (D. Utah June 15, 2012). Nevertheless, the fees must be reasonable. See Id. Utah courts consider the following factors in determining the reasonableness of attorneys' fees: (1) What legal work was actually done? (2) How much of the work performed was reasonably necessary to adequately prosecute the matter? (3) Is the attorney's billing rate consistent with the rates customarily charged in the locality for similar services? (4) Are there circumstances which require consideration of additional factors? Id.

The Silver Leaf agreements specifically state that if the contract must be enforced by court action, the prevailing party in any such action is entitled to collect reasonable attorneys' fees and costs from the non-prevailing party. (RADC Venture's Mem. Supp. Summ. J. Ex. I, at 4, Ex. J, at 4, Docket No. 53.) Because RADC Venture is the prevailing party and has spent money to enforce the agreements in this court action, the court holds that RADC Venture should be awarded reasonable attorney fees and costs.

## IV.  Conclusion

As shown above, the Defendants are jointly and severally liable for any deficiencies stemming from the personal loan guaranties and agreements, as well as reasonable fees and costs.  Accordingly, RADC Venture's Motion for Summary Judgment (Docket No. 52) is GRANTED.

RADC Venture is directed to submit a final proposed judgment to the court, along with accompanying documentation demonstrating amounts for which the Defendants are jointly and severally liable under the personal loan guaranties and agreements, as well as documentation demonstrating reasonable attorneys' fees and costs.

SO ORDERED this 26th day of November 2012.

BY THE COURT:

*Tena Campbell*

TENA CAMPBELL
U.S. District Court Judge